**In the Matter of Steven T. JOHNSON, Director, Scott County Court Services.**

**No. C6–84–1419.**

Court of Appeals of Minnesota.

Dec. 4, 1984.

R. Kathleen Morris, Scott County Atty., Pamela Ann McCabe, Asst. County Atty., Shakopee, for Scott County Bd. of Commissioners and Scott County Human Services Board.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., Jerome L. Getz, Deputy Atty. Gen., St. Paul, for respondent Judges.

Robert J. Goggins, O'Neill, Goggins, Traxler & Zard, Ltd., New Prague, for Steven T. Johnson.

Mitchell A. Dubow, Judge of District Court, Ann L. Russell, Sp. Asst. Atty. Gen., St. Paul, for amicus Minnesota District Judges Assoc.

Stephen E. Forestell, St. Paul, for amicus Minnesota Judges Ass'n.

Richard P. Cox, St. Paul, for amicus Ass'n of Minnesota Counties.

Hubert F. McCloy, Cambridge, for Minnesota Ass'n of County Probation Officers.

Considered and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Scott County, the Scott County Board of Commissioners and the Scott County Human Services Board petition for a writ of prohibition seeking to restrain the judges of the First Judicial District from enforcing their August 2, 1984 order reinstating respondent Steven T. Johnson as Director of Scott County Court Services. Petitioners contend they have the sole authority and the respondent judges have neither the statutory authority nor the inherent judicial power to hire and fire the director of court services in Scott County. The respondent judges contend (1) that they, rather than the Scott County Human Services Board, have statutory and inherent authority to hire, fire, and reinstate the director of court services, and (2) a writ of prohibition is inappropriate under the circumstances of this case.

Writ denied.

## FACTS

Upon the recommendation of Richard J. Menke, Chief Judge of the Scott County Court, the Scott County Board of Commissioners promoted respondent Steven T. Johnson to the position of Director of Court Services and Chief Probation Officer effective January 1, 1976. On December 31, 1975, Judge Menke signed an order appointing Johnson to the position.

On June 23, 1984, Johnson's office was searched. Cash, undeposited checks and money orders totaling approximately $14,000 were found. These funds had been collected by Johnson as restitution but not distributed to crime victims.

On June 25, 1984, the Scott County Attorney requested respondent Judge John M. Fitzgerald to suspend Johnson. Judge Fitzgerald signed the order suspending Johnson with pay. On the same day, the Scott County Board of Commissioners also suspended Johnson with pay.

The financial records of the Department of Court Services were then audited, and copies of the report were given to the County and to Judge Robert J. Breunig, First Judicial District Chief Judge, on July 16. Later, the Scott County administrator told Judge Breunig the Board of Commissioners believed Johnson incurred contractual obligations for adult placements that were not authorized by the Board. There

is no evidence that Johnson personally received any funds.

On August 2, 1984, the respondent judges ordered Johnson reinstated pending further review, subject to reimbursement for any losses which resulted from his acts or omissions. The judges reinstated Johnson because the audit did not find that restitution funds were misappropriated and because the public would be better served if Johnson worked for his salary. Judge Breunig contends the Board's allegation that Johnson had incurred unauthorized contractual obligations appeared to be without merit because particular line items in the budget included probation services for adults.

The reinstatement order was filed on August 6 and Johnson resumed his duties. The next day the Board told Johnson he remained suspended. A dismissal hearing was scheduled for August 21, 1984; the Board formally dismissed Johnson on September 11.

A petition for a writ of prohibition was filed with this court on August 10, 1984. On August 30, 1984, we issued an order inviting briefs from the parties, additional materials, and amicus briefs.

Petitioners then moved to bar Johnson from performing his duties, which we denied. The judges filed a motion to dismiss. We reserved decision on that motion pending consideration of the merits.

## ISSUE

Did respondent judges have the authority to appoint and reinstate a director of county court services?

## ANALYSIS

1. The petitioners seek a writ of prohibition contending the respondent judges have neither the statutory authority nor the inherent judicial power to hire and fire the Scott County director of court services. The Board claims statutory authority to hire and fire Johnson.

The respondent judges contend a writ of prohibition should not issue because the criteria for a writ have not been met.

A writ of prohibition may issue when (1) the [lower] court is about to exercise judicial power; (2) the exercise of such power is unauthorized by law; and (3) the exercise of such power may result in an injury for which there is no other adequate remedy at law.

*State v. Hagen,* 342 N.W.2d 160, 161 (Minn. Ct.App.1984). The central dispute is whether respondent judges exceeded their legal powers.

2. Each party claims their authority to hire and fire is found in Minn.Stat. § 260.-311, subd. 1 (1982), which states:

If a county or group of counties has established a human services board pursuant to chapter 402, the juvenile court may appoint one or more *probation officers* as necessary to perform court services, and the human services board shall appoint *persons* as necessary to provide correctional services within the authority granted in chapter 402.

*Id.* (emphasis added).

Scott County has established a human services board, so an interpretation of the statute is necessary.

Petitioners assert (1) only a juvenile court may appoint probation officers, (2) the probation officers may only serve the juvenile court, and (3) the only court services that can be performed by juvenile probation officers are compiling of juvenile social histories and making dispositional recommendations.

Minn.Stat. § 260.311, subd. 1 vests the juvenile court with authority to appoint probation officers when a county has established a human services board. The judges claim the First Judicial District became a unified district and all judges are empowered to act as juvenile court judges. The petitioners disagree. We need not decide which judge in the First District has the authority of the juvenile court because the order reinstating Johnson was signed by all of the First District judges, including the two Scott County judges.

Petitioners also claim a probation officer may only serve the juvenile court. The statute is not so limiting. The only limitation is that probation officers are appointed "as necessary to perform court services."

Petitioners further claim the only court services to be performed by the probation officers appointed by the juvenile court are compiling of juvenile social histories and making dispositional recommendations. We can find no statutory language to support this assertion. "Court services" are not defined by Minn.Stat. § 260.311, but the powers and duties of "all probation officers serving county courts" are set forth in subdivision 3. These powers and duties are extremely broad and include providing probation and parole services. Other statutes give probation officers additional functions. *See, e.g.,* Minn.Stat. § 169.-124 (1982) (authority to conduct alcohol problem assessments); Minn.Stat. § 609.-135 (1982) (authority to supervise restitution payments).

We find that under Minn.Stat. § 260.311, subd. 1, the respondent judges have the authority to hire and fire probation officers who perform court services. In addition to the statutory authority, the court may have the inherent power to appoint necessary personnel. In *Judges for the Third Judicial Circuit v. County of Wayne,* 383 Mich. 10, 172 N.W.2d 436, *cert. denied,* 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1969), the Michigan court stated:

It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.

383 Mich. at 20–21, 172 N.W.2d at 440.

The terms "Chief Probation Officer" and "Director of Court Services" are administrative titles and do not add or detract from the court's fundamental inherent or statutory power.

3. A more specific question is whether respondent Johnson was reinstated to perform the services of a probation officer. The petitioners claim that he was performing "correctional services" and thus they are the only ones who have the authority under Minn.Stat. § 260.311, subd. 1 to appoint him. "Correctional services" are not defined by either Minn.Stat. § 260.-311 or the Human Services Act, Minn.Stat. ch. 402 (1982). The legislative history and the statute itself clearly indicate the legislature intended that "correctional services" be distinct from "court services." It did not, however, define these terms and we need not define them to make a determination in this case. We believe Johnson was performing court services and leave any alleged confusion in the statute for the legislature.

4. Petitioners' also claim the respondent judges did not make a showing of necessity as required by Minn.Stat. § 260.311, subd. 1 (1982). Johnson was appointed Director of Court Services in 1975. Petitioners cannot argue now that no showing of necessity was made in 1975.

5. We invited the petitioners to submit additional materials and a brief in addition to their moving papers. In their brief, they acknowledged the facts regarding Johnson's particular functions are both unique and in dispute. They claim that these facts would be of little assistance to this court in determining this matter. We disagree. A writ of prohibition "normally will issue only where all the essential facts are undisputed." *State ex rel. Law v. District Court of Ramsey County,* 276 Minn. 324, 325, 150 N.W.2d 18, 19 (1967). We cannot determine what particular functions Johnson served based on the record before us. His functions are both unique to the circumstances of Scott County and in dispute.

## DECISION

The respondent judges have the authority to hire, fire, or reinstate probation offi-

cers. Since it has not been established that Johnson does not perform the functions of a probation officer, we deny the writ of prohibition.

Denied.